**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALLSTATE INSURANCE CO.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **LEVELL, et al.,** | : | **No. 07-3790** |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

Schiller, J.                                                                October 31, 2008

Plaintiff Allstate Insurance Company ("Allstate") brings this declaratory judgment action against Defendants James J. Levell, Diane Levell and Roxane Higginbotham Taylor, Executrix of the Estate of Keith Larson Taylor, based on a Deluxe Plus homeowner's insurance policy issued by Allstate, policy number 001-143-722, which covers the Levells' residence (the "Deluxe Plus Policy"). Allstate seeks a declaration that it does not owe liability coverage or a defense to the Levells under the Deluxe Plus Policy in connection with a claim brought by Defendant Taylor. Defendant Taylor has counterclaimed, seeking a declaration that Allstate is obligated to provide the Levells with coverage and a defense in connection with her claim. Currently before the Court are the parties' cross-motions for summary judgment. For the following reasons, Allstate's motion for summary judgment is granted and Taylor's motion for summary judgment is denied.

## I.      BACKGROUND

### A.      The September 11, 2002 accident

The Levells have resided at 4562 Route 202, Doylestown, PA ("residential property" or "4562 property") since October 1, 1997. (Pl.'s Mot. for Summ. J. Ex. C [James Levell Dep.] at 7.)

The Deluxe Plus Policy at issue in this case applies to that property.  (Pl.'s Mot. for Summ. J. [hereinafter Pl.'s Mot.] ¶ 2.)   The Levells also own the adjacent property at 4542 Route 202, Doylestown, PA ("rental property" or "4542 property"), on which there is a multi-family dwelling that they use for rental income.  (*Id.* ¶ 3; James Levell Dep. at 76-77; Taylor's Mot. for Summ. J. [hereinafter Taylor's Mot.] ¶ 2.)   A separate Allstate-issued insurance policy covers the 4542 property (the "4542 Policy").  (Pl.'s Mot. ¶ 3.)

On September 11, 2002, a tree or tree branch fell from the 4542 property, killing Keith Larson Taylor, a passing motorist.  (Pl.'s Mot. ¶ 7; Taylor's Mot. ¶ 6.)  Defendant Taylor, Keith Taylor's widow and the Executrix of his estate, brought a negligence claim against the Levells alleging that the Levells failed to adequately maintain the tree that caused Mr. Taylor's death.  (Pl.'s Mot. ¶ 5; Taylor's Mot. Ex. C [Taylor's Compl.].)   The Levells in turn submitted this claim to Allstate for coverage under both of their insurance policies.   (Pl.'s Mot. ¶ 5.)  Allstate agreed to provide liability coverage and a defense under the 4542 Policy.  (*Id.* ¶ 6.)  However, Allstate denied coverage under the Deluxe Plus Policy, which excludes coverage for "bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by an insured person."  (Pl.'s Mot. Ex. A at Ex. A [Deluxe Plus Policy] at 23, ¶ 40.)  The Deluxe Plus Policy defines "insured premises" as "the residence premises," here, the Levells' residence located at 4562 Route 202, and "any premises used by an insured person in connection with the residence premises."  (*Id.* at 3, ¶ 8.)  This Court must therefore determine whether the Levells "used" the 4542 property "in connection with" the 4562 property, such that Allstate is required to provide coverage

and a defense under the Deluxe Plus Policy in connection with Taylor's claim.[1]

      **B.**    **Facts relating to the Levells alleged use of the rental property**

From October 1997 through at least June 2008, Mr. Levell used the 4542 address as a mailing address and as the address on his driver's license and motor vehicle registration. (Taylor's Mot. ¶ 26.) Additionally, Mr. Levell tells people that he lives at 4542 Route 202, even though the Levells have resided at the 4562 property for over a decade. (*Id.*) According to Mr. Levell, the failure to change his address was a result of "inertia" and "laziness." (James Levell Dep. at 7, 86.) The two properties share a main driveway located on the 4542 property, but the 4562 property also has a two separate driveways; Mr. Levell uses all three of the driveways to access the 4562 property. (*Id.* at 9-10; Taylor Mot. Ex. H [Taylor's Sec. Set of Reqs. for Admis. and Interrogs. to the Levells and Levells' Answers] at Req. No. 12-13 & Ex. 7-9 [pictures of shared driveway].) He estimated that he uses the shared main driveway forty percent of the time. (James Levell Dep. at 10.) The trash for both properties is collected from one location on the 4562 property. (Taylor's Mot. ¶ 28.)

Although the Levells rented the dwelling on the 4542 property, they retained certain responsibilities as landlords. The Levells maintained the driveway, occasionally mowed the lawn, and maintained the area from where the tree fell, which included transplanting plants and removing poison ivy. (Taylor's Mot. Ex. J [Diane Levell Dep.] at 51-52, 90, 94-97.) Diane Levell performed most of this maintenance, usually with the assistance of local teenagers she hired. (Diane Levell Dep. at 31, 94-102; Taylor's Mot. Ex. I [Taylor's Req. for Admis., Interrogs. Directed to the Levells and Levells' Answers] at Req. Nos. 12, 16, 17.) Additionally, James Levell would clear leaves and

---

[1] Taylor's lawsuit against the Levells was settled several months after the instant suit was filed, with the agreement that any coverage under the Deluxe Plus Policy would be paid to Taylor if she prevailed in this lawsuit. (Taylor's Mot. ¶ 12.)

other debris from drainage ditches on the 4542 property and he would occasionally mow the lawn. (Diane Levell Dep. 106-07.)  The Levells undertook these maintenance tasks for the benefit of the rental property.  (James Levell Dep. at 80-81.)

In October 1997, when the Levells first moved into the house on the 4562 property, little to no landscaping had been completed on that property.  (Taylor's Req. for Admis., Interrogs. Directed to the Levells and Levells' Answers at Req. No. 4; Taylor's Mot. ¶ 29.)  Accordingly, Diane Levell landscaped the 4562 property with some of the forsythia and wineberry plants she removed from the area on the 4542 property near the tree that fell on Mr. Taylor.  (Taylor's Mot. ¶ 31.)  In response to an inquiry regarding how the Levells came to transplant shrubs from the rental property onto the residential property, James Levell testified:

> A:    I think there were mixed motives.  I know the Forsythia bush was very overgrown and also and this is Diane's bailiwick, she's the creative artist, she thought that it just made sense to kill two birds with one stone.  Trim an overgrown area and then use the transplanted shrubs for the new house property.
>
> Q:    When you would have to trim or cut back the shrubs, was that for purposes of maintaining the rental property for the tenants?
>
> A:    Yes.

(James Levell Dep. at 83-84.)

These landscaping efforts ceased at some point in the year 2000, although Taylor disputes this fact, as discussed below.  (Taylor's Req. for Admis., Interrogs. Directed to the Levells and Levells' Answers at Req. Nos. 12, 16, 17.)  Even though the Levells stopped transplanting shrubs onto the 4562 property, they continued — up until the date of the accident — to maintain the 4542 property by trimming back the forsythia and wineberry plants or digging them out to keep the area

clear.  (*Id*.; Taylor's Mot. ¶ 31.)


## II.    STANDARD OF REVIEW

"Whether a particular loss is within the coverage of an insurance policy is a question of law which may be decided on a motion for summary judgment in a declaratory judgment action." *Lebanon Coach Co. v. Carolina Cas. Ins. Co.*, 675 A.2d 279, 283 (Pa. Super. Ct. 1996).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of identifying those portions of the record that it believes illustrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party makes such a demonstration, the burden then shifts to the nonmovant, who must offer evidence that establishes a genuine issue of material fact that should proceed to trial. *Id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).  When evaluating a motion brought under Rule 56(c), a court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  A court must, however, avoid making credibility determinations or weighing the evidence.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also*

*Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).  The same standards apply to cross-motions for summary judgment.  *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987); *see also Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001).

## III.    DISCUSSION

A district court sitting in diversity must apply the substantive law of the forum state, here, Pennsylvania.  *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).   In Pennsylvania, the court, not a jury, generally performs the function of interpreting an insurance contract.  *401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005).  The initial burden lies with the insured to establish coverage under an insurance policy.  *See Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super. Ct. 1995); *see also Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996).  When an insurer relies on a policy exclusion to deny coverage, however, it bears the burden of showing the exclusion applies.  *Cont'l Cas. Co. v. County of Chester*, 244 F. Supp. 2d 403, 407 (E.D. Pa. 2003); *see also Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

The court's task is to unearth the intention of the parties as evidenced by the words used in the insurance policy.  *See 401 Fourth St.*, 879 A.2d at 171.  The policy must be read as a whole and its meaning must be construed according to its plain language.  *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *see also Giancristoforo v. Mission Gas & Oil Prods.*, 776 F. Supp. 1037, 1041 (E.D. Pa. 1991).  Words of common usage are to be construed in their natural, plain, and ordinary sense, and a court is free to consult a dictionary to inform its

6

understanding of terms. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999). However, should the policy define certain terms, the court will apply those definitions in construing the policy. *See J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004). Courts must not assume that contractual language was chosen carelessly. *401 Fourth St.*, 879 A.2d at 171 (citations omitted). When the language of an insurance policy is clear and unambiguous, a court must enforce that language. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).

The issue for this Court is whether the Levells "used" the 4542 property "in connection with" the 4562 property such that Allstate is required, under the Deluxe Plus Policy, to cover the injury sustained by Mr. Taylor. The parties agree that *State Farm Fire and Casualty Co. v. MacDonald*, 850 A.2d 707 (Pa. Super. Ct. 2004) provides the applicable legal framework. In *MacDonald*, a declaratory judgment action brought by an insurance company, the Pennsylvania Superior Court construed contractual language identical to the language at issue here. State Farm insured MacDonald's residence. MacDonald kept his and a friend's ATVs on his property; MacDonald "frequently" rode his ATV across a field adjacent to his property. One day, with MacDonald's permission, the friend's teenage daughter and her friends took the ATVs for a ride. One of the teenagers was killed when the ATV he was riding on crashed into a tree on the field adjacent to MacDonald's property. The parents of the decedent brought a wrongful death claim against MacDonald, after which State Farm sought a declaration that they did not owe coverage in connection with the incident. State Farm relied on an exclusion of coverage for motor vehicle accidents off an "insured location;" the policy defined "insured location" as "the residence premises," and, among other things, "any premises used by you in connection with the [residence]

7

premises." *Id.* at 710.

The *MacDonald* court concluded that the word "use" and the phrase "in connection with" were to be given their ordinary meanings.  Accordingly, the court defined "use" as "continued or repeated exercise or employment" or "habitual or customary practice." *Id.* at 711.  It defined "connection" as "the act of connecting: a coming into or being put in contact" and "with" as "alongside of: near to." *Id.*  The *MacDonald* court concluded that, since MacDonald "repeatedly rode his ATV from his property onto the adjacent field and back," he used the field adjacent to his property in connection with his property such that the State Farm insurance policy covered the accident in question. *Id.*

The Third Circuit applied *MacDonald* in *Allstate Insurance Co. v. Drumheller*, 185 Fed. Appx. 152 (3d Cir. 2006).  Although *Drumheller* is an unpublished opinion, its discussion of *MacDonald* is informative.  Drumheller and his boss rode Drumheller's ATV on an off-road trail located on a neighbor's property where Drumheller frequently rode his ATV. *Allstate Ins. Co. v. Drumheller*, 285 F. Supp. 2d 605, 607-08 (E.D. Pa. 2003), *vacated and remanded by*, 115 Fed. Appx. 528 (3d Cir. 2004).[2]  Drumheller's boss was injured when the ATV struck a manhole cover on the trail.  She brought a claim against Drumheller to recover for her injuries.  Allstate subsequently sought a declaratory judgment that it was not obligated to provide coverage under Drumheller's policy.  At issue was whether the incident fell within the policy's exclusion of coverage for bodily injury arising out of use of an ATV when the ATV is not used on an "insured premises." *Drumheller*, 185 Fed. Appx. at 153.  The policy at issue defined "insured premises" as,

---

[2] The district court in *Drumheller* initially granted summary judgment to Allstate, but the Third Circuit vacated and remanded in light of the *MacDonald* decision, which issued after the district court rendered its decision.  On remand, the district court found in favor of Drumheller.

among other things, "any premises used by an insured person in connection with the residence premises." *Id.*

The Third Circuit, relying on *MacDonald*, concluded that Allstate was required to indemnify Drumheller.  The trail on which the accident occurred did not touch the Drumheller's property. Instead, Drumheller had to travel approximately 800 yards from his driveway to get to trail.  That fact, however, did not preclude coverage.   In affirming the district court, the Third Circuit emphasized that "[t]he entire focus in *MacDonald* was MacDonald's *repeated use* of the ATV on his property and on the adjacent field" and concluded "that the Pennsylvania Supreme Court would follow *MacDonald's* holding that 'in connection with' means the repeated use of the ATV emanating from and returning to the insured's residence." *Id.* at 158.  Accordingly, since Drumheller regularly used his ATV on the nearby trail for recreational purposes, the trail was an insured premise within the meaning of the policy even though it did not actually touch Drumheller's property.

## A.    Landscaping

Taylor takes the position that the Levells "used" the 4542 property "in connection with" the 4562 property because Diane Levell removed wineberry plants, forsythia and other shrubs from the rental property and transplanted them onto the residential property for landscaping purposes from October 1997 until the date of the accident.  Allstate responds that the Levells maintained the trees and plants on the 4542 property in connection with their role as landlords, for purposes of caring for the rental property, not for the benefit of the residential property.  Additionally, Allstate disputes that any landscaping of the 4562 property with shrubs from the 4542 property continued up until the point of the accident — Allstate asserts that these efforts ceased some time in the year 2000.

As a preliminary matter, Taylor wisely does not argue that the Levells' general maintenance

of the 4542 property constitutes "use in connection with" the 4562 property.  Instead, Taylor's

argument hinges on the fact that Diane Levell used some of the trees she uprooted from the 4542

property for purposes of landscaping the 4562 property.  The parties do not dispute that Diane Levell

transplanted these shrubs onto the 4562 property prior to September 2002, nor do they dispute that

she stopped doing so after the accident.  (Taylor's Mot. ¶ 31.)   However, they dispute when Ms.

Levell's landscaping ceased.

Taylor's position — that Diane Levell transplanted trees onto the 4562 property up until the

date of the September 2002 accident — is based upon Diane Levell's deposition testimony.[3]  In

response to questions regarding what she did to maintain the 4542 property, Diane Levell testified

that, among other things, she "was constantly transplanting wineberries, shrubs, [and] forsythia," for

purposes of "trying to landscape the other property cheaply," although she did not specify the time

frame in which she conducted this landscaping.  (Diane Levell Dep. at 51-53.)  Ms. Levell also

testified that the area from where the tree fell was relatively clear just prior to the accident, which

Taylor suggests proves that Ms. Levell was transplanting shrubs onto the 4562 property at that time:

> Q:      And with regard to keeping the underbrush — or clearing the underbrush,
>          keeping the area neat and orderly —
>
> A:      Uh-huh.
>
> Q:       — taking vines from the trees —
>
> A:      Uh-huh.

_____

[3] Diane Levell's deposition was taken in the underlying negligence action.  In light of a
health condition and the Levells' motion for a protective order precluding the parties from
deposing Ms. Levell, the parties agreed that Diane Levell's former testimony would be
admissible in this lawsuit, so as to avoid subjecting her to a second deposition.  However, this
Court permitted the parties to supplement Ms. Levell's prior testimony with written
interrogatories, which they did.

Q:      — would you continue to do that in the area where the PennDOT right-of-way is?

A:      I would except I haven't touched where the tree came down for — since the accident.  I was afraid to touch anything in case someone wanted evidence, or something, so I stopped.

Q:      Well, when you say the area where the tree came down, what area are you talking about?  I mean, just the area where the stump was?

A:      No.  No, that whole area.

Q:      When you say "that whole area," can you give me some dimension of the whole area that you're talking about?

A:      Yes.  From — basically, from — from outside the apartment house on the other side —

        MR. GOULDING:   The side opposite your home?
        THE WITNESS:     Yes, the side opposite our home
               — I've stopped maintaining for the last four years, except for spraying for poison ivy to a certain extent.
               It was completely cleared.  That area was completely clear.  And if you go out there now, it isn't.  I have wineberries growing everywhere that weren't there because I transplanted them.
               I used to be able to get to the area easily to remove the Forsythia because I was transplanting it to the other parts of the property, and now this summer I notice it's not easy for me to get to the Forsythia.
               So that area looks completely different than it did four or five years ago.  Mother Nature has completely taken over.

BY MR. BARATTA:

Q:      But it's your testimony that at the time that this accident occurred, this area was completely clear?

A:      It wasn't completely clear, but it was clear enough for people to use the area.  It was clear enough for me to get — and I was transplanting things from that area and moving them and doing work in the area on a daily basis.  It was clear enough for me to walk from the old house and for Jim to get to the drainage ditch without having to go through anything.  It was clear enough for kids to be using that property and playing in that property, because the kids from the back property were using that all the time.

11

(Diane Levell Dep. 110-11.)

Allstate asserts that written discovery in this action illustrates that any transplanting of shrubs onto the 4562 property ceased by the year 2000.  According to the Levells' answers to Allstate's interrogatories, the last time plants or vegetation were transplanted from the 4542 property near where the tree fell to the 4562 property prior to September 11, 2002 was the fall of 1999.[4]  (Pl.'s Mot. Ex. E [Interrogs. Directed to James J. and Diane Levell and Levells' Answers] at No. 2.)  In response to Taylor's requests for admissions and interrogatories on the subject, the Levells denied that Diane was constantly transplanting plants from the 4542 property to the 4562 property prior to the September 2002 accident and denied that the area from where the tree fell was clear because Diane was transplanting plants from the area onto the 4562 property.  (Taylor's Req. for Admis. and Interrogs. to Levells and Levells' Answers at Req. Nos. 16-17.)  The Levells clarified that any transplanting of wineberry, forsythia or other plants from the 4542 property onto the 4562 property ceased by the year 2000, but explained that they continued to maintain the 4542 property, which included either cutting back or digging out the forsythia and wineberry bushes to keep the area clear. (*Id.*)  James Levell's testimony corroborates these responses.  (James Levell Dep. at 82-83 (transplanting must have occurred in 1998, 1999, and 2000, "the early days when [he and his wife] were very, very busy working on the new property").)

It is clear that any transplanting of wineberry, forsythia and/or other plants from the 4542 property onto the 4562 property ceased by the year 2000.  The uncontroverted evidence from the

---

[4] In the same set of interrogatories, Allstate also asked when, prior to September 11, 2002, was the last time "that any plant or vegetation were transplanted from the property at 4542 Route 202 to the property at 4562 Route 202," to which the Levells responded "the fall of 1989." (Interrogs. Directed to James J. and Diane Levell and Levells' Answers at No. 3.)  This answer is likely a typo since the Levells did not even move onto the property until 1997.

Levells is that the landscaping of the 4562 property ceased well before the accident.  Ms. Levell's deposition testimony, which does not clearly date her landscaping activities, does not alter this outcome.  Thus, even assuming that the Levells' activities render the area on the 4542 property near the tree "used in connection with" the 4562 property, those activities ceased at least two years prior to the September 2002 incident.  Accordingly, the Levells' landscaping cannot be considered repeated use within the meaning of *MacDonald*, and is insufficient to render the 4542 property premises used in connection with the 4562 property.

### B.      The mailbox, trash and driveway

Taylor also argues that the Levells used the rental property in connection with the residential property because the Levells used the two properties "as symbiotic lands."  Taylor argues that this is evidenced by the fact that James Levell "regularly and repeatedly uses the driveway on the [4542] property for his own vehicle," uses the 4542 address for his license, motor vehicle registration and to receive mail, tells everyone that he lives at 4542 Route 202, and that the residents of 4542 place their trash on the 4562 property for pick up.  (Taylor's Mot. at 11-12.)

Under *MacDonald*, "connection" means the "act of connecting, coming into or being put into contact."  850 A.2d at 711.  The Levells' receipt of mail at the 4542 address does not equate to use of that property "in connection with" the residential property for purposes of rendering the 4542 property an insured premise under the Deluxe Plus Policy.  The Levells' decision to have their mail delivered to the address next door does not render any use of that property use "in connection with" their residence.  Indeed, if the Levells lived next to a post office and chose to receive their mail at a post office box, instead of at their residence, they would not be using the post office box in connection with their property; they would merely be using the post office box for personal reasons,

13

as here.  Under the same logic, the fact that Mr. Levell registers his car at the 4542 address and tells

people he lives there does not constitute use "in connection with" the 4562 premises.

The fact that the location for trash pick-up for both properties is located on the 4562 property

also does not bring Taylor's claim within the Deluxe Plus Policy.  Taylor cannot establish use of the

rental property in connection with the residential property by showing that the Levells' tenants

placed their trash *on the residential property* to be collected.   Even if use of trash receptacles on an

adjoining property could be considered "use in connection with" one's residential premises, the facts

here do not support such a claim because the alleged "use" occurred on the residential property itself,

not the adjoining rental property.

Mr. Levell's use of the shared driveway on the 4542 property raises a closer question because

that use appears to fall within *Drumheller's* construction of "use in connection with." 185 Fed.

Appx. at 158.  But, Mr. Levell's use of the shared driveway cannot be imputed to the area of the

4542 property from where the tree fell.

In *Farmers New Century Insurance Co. v. Angerson*, Civ. A. No. 04-2608, 2008 WL 238622

(M.D. Pa. Jan. 22, 2008), the court held that Farmers had to defend and indemnify Angerson and his

minor son, C.L.A., from claims arising out of an ATV accident that caused injury to C.L.A.'s minor

friend when the two minors were riding the ATV on a wooded path that was not located on

Angerson's property.  There were several ATV paths in the area surrounding Angerson's house.

Prior to the accident, Angerson used the ATV ten to fifteen times a month on these wooded paths

for recreation and C.L.A. rode the ATV on these paths once a week.  Angerson also used the ATV

to gather large stones from the wooded area, which his wife used to create a rock garden.  However,

Angerson had never ridden to the exact location of the accident.  The policy at issue excluded

14

coverage for use of a motor vehicle owned by an insured, but an exception stated that this exclusion did not apply to: "A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and . . . owned by an insured and on an insured location." *Id.* at *5 (internal quotations omitted) (alterations in original).  The policy defined insured location to include "any premises used by you in connection with [the residence premises]." *Id.* at *10.

The court rejected Farmers's argument that the accident could not have occurred on an insured location because Angerson never rode his ATV to the exact site of the accident:

> This argument unfairly narrows the inquiry called for by *MacDonald*.  The question in *MacDonald* was not whether the insured had been to the exact spot in the adjacent field where the accident occurred, but whether he had used the field.  Similarly, the inquiry in *Drumheller* was not whether the insured had previously ridden over the particular manhole cover that caused the accident, but whether he had ridden generally on the trail where the manhole was located.

*Angerson*, 2008 WL 238622, at *14.  Accordingly, since Angerson and his son "repeatedly rode the ATV from their property into the adjacent woods and back for recreational and home-improvement purposes," the area where the accident occurred was used in connection with the residence premises within the meaning of the policy.  *Id.*

Pursuant to *Angerson*, so long as the insured generally uses the area where an incident occurs, the location of the incident can be considered "used in connection with" the residential premises.  However, in *Angerson*, as in *Drumheller* and *MacDonald*, the accident giving rise to the claim took place on an adjacent trail or field where the insured generally rode his ATV repeatedly prior to the accident.  This case is distinguishable because the accident giving rise to Taylor's claim did not occur on or next to the driveway that Mr. Levell frequently traverses, but instead on the tree-lined part of the 4542 property aligning Route 202.  Mr. Levell's use of the driveway on the 4542 property

15

to access his residence might be considered a use in connection with his residential property under *MacDonald*, however, it does not follow that the use of a shared driveway equates to use of the 4542 property in its entirety.  To conclude otherwise would stretch the meaning of the word "use" to allow recovery for incidents that occurred on areas of the property that the Levells clearly did not use (such as the rental home for example), contrary to the language of the Deluxe Plus Policy.  Accordingly, the Levells did not use the area of the rental property giving rise to the accident in connection with their residential property, and Taylor's claim is not covered by the Deluxe Plus Policy.[5]

## IV.    CONCLUSION

Based on the above, Allstate is entitled to summary judgment because the Levells did not use their rental property in connection with their residential property.[6]  Accordingly, Allstate is entitled to a declaration that it does not owe coverage or a defense to the Levells under the Deluxe Plus Policy.  An appropriate Order follows.

---

[5] Furthermore, if the Levells thought that the Deluxe Plus Policy covered the 4542 property by virtue of their use of that property in connection with the 4562 property, paying for two separate insurance policies would be unnecessary.

[6] Because the Court finds that Taylor's claim falls within the Deluxe Plus Policy's exclusion of coverage for bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by an insured person, it need not consider the parties' arguments pertaining to the policy's exclusion of coverage for "bodily injury . . . arising out of past or present business activities of an insured person."  (Deluxe Plus Policy at 23, ¶ 13.)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALLSTATE INSURANCE CO.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **LEVELL, et al.,** | : | **No. 07-3790** |
| **Defendants.** | : | |

## <u>ORDER</u>

**AND NOW**, this **31ˢᵗ** day of **October, 2008**, upon consideration of Plaintiff Allstate Insurance Company and Defendant Roxane Higginbotham Taylor's cross-motions for summary judgment and their responses, following oral argument on October 28, 2008, and for the foregoing reasons, it is hereby **ORDERED** that:

1.  Plaintiff Allstate Insurance Company's Motion for Summary Judgment (Document No. 26) is **GRANTED**.

2.  Declaratory judgment is entered as follows:

    a.  "Allstate does not owe liability coverage to its insureds, James J. Levell and Diane Levell, under their Deluxe Plus Homeowner's Policy with Allstate, policy number 001-143-722, for any claims alleged against them for the fatal injuries sustained by Keith Larson Taylor and raised by his Executrix, Roxane Higginbotham Taylor, from a motor vehicle accident occurring on or about September 11, 2002."

    b.  "Allstate does not owe a defense to its insureds James J. Levell and Diane Levell, under the Deluxe Plus Homeowner's Policy with Allstate, policy

number 001-143-722, for the allegations against the Levells filed at

Docket No. 0405799 in the Court of Common Pleas of Bucks County,

PA."

3.    Defendant Roxane Higginbotham Taylor's Motion for Summary Judgment

(Document No. 27) is **DENIED**.

4.    The Clerk of Court is directed to close this case.


**BY THE COURT:**

**Berle M. Schiller, J.**

2